IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> and <br><br> COMMONWEALTH OF <br> PENNSYLVANIA, DEPARTMENT <br> OF ENVIRONMENTAL <br> PROTECTION, <br> Plaintiffs, <br><br> v. <br><br> ERIE COKE CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO.: <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

The United States of America, by and through its attorneys, by authority of the Attorney General of the United States and acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), and the Commonwealth of Pennsylvania, Department of Environmental Protection ("PADEP") ( collectively "Plaintiffs") allege the following:

### NATURE OF ACTION

1. This is a civil action brought against Erie Coke Corporation ("Defendant" or "Erie Coke") for injunctive relief and the assessment of civil penalties for violations of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. §§ 7401 to 7671q, implementing regulations and the Pennsylvania State Implementation Plan ("SIP"). The alleged violations occurred and are

occurring at Erie Coke's coke production facilities located in Erie County, Pennsylvania (hereafter the "Erie Coke Facility" or "Facility").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this district pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a) because the violations of the Act giving rise to this claim occurred in this district and Defendant does business and is found in this district.

## NOTICES

4. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), U.S. EPA and/or PADEP notified Erie Coke of the violations of the Pennsylvania SIP and Title V Permit alleged in this Complaint on: June 19, 2008; August 22, 2008; August 28, 2008; October 17, 2008; November 21, 2008; December 4, 2008; December 11, 2008; December 16, 2008; February 5, 2009; February, 9, 2009; March 16, 2009; April 29, 2009; April 30, 2009; May 1, 2009; May 5, 2009; May 6, 2009; May 11, 2009; and May 15, 2009.

5. In addition, pursuant to 42 U.S.C. §7604(a), PADEP provided notice on June 5, 2009 via certified mail, return receipt requested, to Erie Coke and relevant federal officials of PADEP's intent to file an action against Erie Coke for violations of the Pennsylvania SIP and Title V Permit at the Erie Coke Facility should the violations not be addressed. More than 60 days has past since this notice was sent.

## AUTHORITY

6. Authority to bring this action is vested in the Attorney General of the United States pursuant to 28 U.S.C. §§ 516 and 519 and 42 U.S.C. § 7605, and the Office of General Counsel of the Commonwealth of Pennsylvania pursuant to § 71 P.S. §§ 732-301 and 732-402. The Commonwealth of Pennsylvania intervenes with the United States in this action pursuant to 42 U.S.C. § 7604.

## DEFENDANT

7. Defendant Erie Coke Corporation ("Erie Coke") is a corporation organized under the laws of the Commonwealth of Pennsylvania.

8. Erie Coke is a "person" as defined in CAA Section 302(e), 42 U.S.C. § 7602(e).

9. The Erie Coke Facility is located on East Avenue in the city of Erie, Erie County, Pennsylvania. The Facility includes two coke oven batteries comprised of numerous coke ovens for the production of foundry coke. These ovens are heated by combusting coke oven gas in flues. The combustion by-products are emitted from the batteries through a single combustion stack.

10. Coke at the plant is produced from coal. Coal is charged into hot ovens and all the volatile matter in the coal is driven off as coke oven gas. Once the charge is complete, the oven ports are sealed and the coal is heated using cleaned coke oven gas to approximately 2,100 degrees Fahrenheit for about 33 hours. Volatile compounds are driven from the coal and sent to the by-products recovery section of the plant. At the end of the heating cycle for each oven, the front and rear doors are removed and the coke is pushed into a rail quench car. The quench car takes the coke to the quench tower where the hot coke is cooled with water. The coke is then

3

screened and sent off site. Coke is used as a carbon source and as a fuel to heat and melt iron ore at steel making facilities.

## STATUTORY AND REGULATORY BACKGROUND

11. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1); 42 U.S.C. § 7401(b)(1).

12. Section 109(a) of the Act, 42 U.S.C. § 7409(a), requires the Administrator of U.S. EPA to publish and maintain primary and secondary national ambient air quality standards ("NAAQS") for certain criteria air pollutants. The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. The NAAQS promulgated by U.S. EPA pursuant to this provision are set forth in 40 C.F.R. Part 50.

13. Under CAA Section 110, 42 U.S.C. § 7410, each state is required to adopt and submit to U.S. EPA for approval a State Implementation Plan (SIP) that provides for the implementation, maintenance and enforcement of NAAQS established under CAA Section 109 within the States. Upon U.S. EPA's approval, State plan provisions become part of the "applicable implementation plan" for the State within the meaning of CAA Section 302(q), 42 U.S.C. § 7602(q). U.S. EPA approved Pennsylvania's SIP. *See* 40 C.F.R. § 52.2020(b). These regulations are hereafter referred to as the "Pennsylvania SIP" or "PSIP".

14. Pursuant to CAA Section 110, 42 U.S.C. § 7410, Pennsylvania adopted various regulations as part of its SIP, including: limits on visible emission opacity from combustion

4

sources, such as coke ovens, 25 Pa. Code § 123.41; limits on visible emission opacity from pushing operations at coke oven batteries, 25 Pa. Code § 129.15(c); and requirements for operating permit monitoring, recordkeeping, and reporting conditions, 25 Pa. Code §127.441(c).

15. Pursuant to 25 Pa. Code § 123.41: "A person may not permit the emission into the outdoor atmosphere of visible air contaminants in such a manner that the opacity of the emission is either of the following: (1) Equal to or greater than 20% for a period or periods aggregating more than 3 minutes in any 1 hour. (2) Equal to or greater than 60% at any time."

16. Pursuant to 25 Pa. Code § 129.15(c): "Visible fugitive air contaminants in excess of 20% opacity from an air cleaning device installed for the control of pushing emissions under a plan approval from [PADEP] shall be prohibited...."

17. Pushing emissions are fugitive emissions. Both federal and SIP regulations contain required procedures to quantify the magnitude of such emissions through opacity readings conducted by properly certified individuals to ensure compliance with the opacity limits above. The SIP standards rely on Method 9 to evaluate visible emission opacity. 40 C.F.R. Part 60, Appendix A; 25 Pa. Code §123.43.

18. Pursuant to 25 Pa. Code §127.441(c): "The operating permit shall incorporate the monitoring, recordkeeping and reporting requirements required by Chapter 139 (relating to sampling and testing) and other monitoring, recordkeeping or reporting requirements ..."

19. Title V of the CAA, 42 U.S.C. §§ 7661-7661f, mandates a federally enforceable operating permit program for certain sources, which states may be approved to implement.

20. U.S. EPA approved the incorporation of the Pennsylvania Title V operating permit program into the Pennsylvania SIP on August 29, 1996. 61 FR 39597.

5

21. The Pennsylvania regulations implementing Pennsylvania's Title V operating permit program are promulgated at 25 Pa. Code §§ 127.401-127.464.

22. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), provides that it is unlawful for any person to violate any requirement of a permit issued under Title V of the Act after the effective date of any permit program approved under Title V of the CAA.

23. Plaintiff PADEP issued a Title V permit for the Erie Coke Facility, No. TV-25-00029, on August 1, 2006 ("Title V Permit").

24. The Title V Permit incorporates the limit on visible emission opacity from pushing operations at coke oven batteries, 25 Pa. Code § 129.15, and the general limit on visible emission opacity from combustion sources, 25 Pa. Code § 123.41.

25. The Title V Permit incorporates annual testing requirements for each of the Boilers to determine the NOx emissions from the Boilers.

26. The Title V Permit requires that the permitted facility comply with the terms and conditions of the Title V Permit and that noncompliance with the permit constitutes a violation of the Act and the Pennsylvania Air Pollution Control Act and is grounds for an enforcement action.

27. The Pennsylvania SIP, 25 Pa. Code § 127.25, provides: "[a] person may not cause or permit the operation of a source subject to § 127.11 (construction plan approval) unless the source and air cleaning devices identified in the application for the plan approval and the plan approval issued to the source, are operated and maintained in accordance with specifications in the application and conditions in the plan approval issued by [PADEP]. A person may not cause or permit the operation of an air contamination source subject to this chapter in a manner

6

inconsistent with good operating practices." This provision is incorporated by reference into Defendant's Permit.

28. The Pennsylvania SIP, 25 Pa. Code § 127.402, provides: "[a] person may not operate a stationary air contamination source unless [PADEP] has issued to the person a permit to operate the source under this article in response to a written application for a permit submitted on forms and containing the information the Department may prescribe . . . ."

29. The Pennsylvania SIP, 25 Pa. Code § 127.444, provides: "[a] person may not cause or permit the operation of a source subject to this article [relating to operating permit requirements] unless the source and air cleaning devices identified in the application for the plan approval and operating permit and the plan approval issued to the source are operated and maintained in accordance with specifications in the application and conditions in the plan approval and operating permit issued by [PADEP]. A person may not cause or permit the operation of an air contamination source subject to this chapter in a mannner inconsistent with good operating practices." This provision is incorporated by reference in Defendant's Title V Permit.

### Enforcement Provisions

30. Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b)(1), authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty against any person whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit. Section 113(b)(2), 42 U.S.C. § 7413(b)(2), authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty against any person whenever such person has

7

violated, or is violation of, requirements of the Clean Air Act other than those specified in Section 113(b)(1).

31. Pursuant to CAA Section 113(a) and (b), 42 U.S.C. § 7413(a) and (b), SIP requirements that U.S. EPA has approved are federally enforceable.

32. Failure to comply with any approved regulatory provision of a SIP renders the person or the governmental entity subject to enforcement action under CAA Section 113, 42 U.S.C. § 7413 and 40 C.F.R. § 52.23.

33. Pursuant to 40 C.F.R. § 52.23, "[f]ailure to comply with any ... permit condition ... issued pursuant to approved or promulgated regulations for the review of new or modified stationary ... sources, or with any permit limitation or condition ... , shall render the person or governmental entity so failing to comply in violation of a requirement of an applicable implementation plan and subject to enforcement action under Section 113 of the CAA."

34. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $32,500 per day for each violation occurring on or after March 15, 2004, and $37,500 per day for each such violation occurring on or after January 12, 2009. In addition, Section 304 of the Act, 42 U.S.C. § 7604, authorizes the Commonwealth of Pennsylvania to initiate a judicial enforcement action or intervene in an action commenced by the Administrator.

35. The Erie Coke Facility is a major air pollution source operating in Pennsylvania and subject to the Pennsylvania SIP.

### FIRST CLAIM FOR RELIEF
### Stack Emissions
### 25 Pa. Code § 123.41

36. The allegations of Paragraphs 1 through 35 are incorporated herein by reference.

37. Between May 7, 2008 and May 13, 2009, EPA and/or PADEP conducted numerous inspections of the emission sources at the Facility. EPA and/or PADEP documented visible emission opacity equal to or greather than 20% opacity and/or 60 % opacity from the combustion (Battery and/or Boiler) stack as follows:

> 20% opacity , time period 1:47 pm to 2:47 pm,  May 7, 2008, 8.25 minutes;
> 20% opacity, time period 2:47 pm to 3:47 pm, May 7, 2008, 16 minutes;
> 20% opacity, time period 8:35 am to 9:35 am, May 8, 2008, 28.5 minutes;
> 20% opacity, time period 10:35 am to 11:35 am,  May 8, 2008, 10 minutes;
> 20% opacity, time  period 2:25 pm to 3:35 pm,  May 8, 2008, 31.25 minutes;
> 20% opacity, time period 10:08 am to 10:28am, August 21, 2008, 10 minutes;
> 60% opacity, time period 10:08am to 10:28am, August 21, 2008, 8.25 minutes;
> 20% opacity, time period 1:15pm to 1:35pm, August 27, 2008, 5.75 minutes;
> 60% opacity, time period 1:15pm to 1:35pm, August 27, 2008, 12.5 minutes;
> 20% opacity, time period 11:02 am to 11:42am, December 2, 2008, 14.5 minutes;
> 20% opacity, time period 11:52 am to 12:26pm, December 10, 2008, 6.5 minutes;
> 20% opacity, time period 10:19 am to 11:19 am, December 11, 2008, 3.5 minutes;
> 20% opacity, time period 12:46 pm to 1:10 pm, January 31, 2009,  9.75 minutes;
> 20% opacity, time period 12:47pm to 1:07pm, February 1, 2009,  11.0 minutes;
> 20% opacity, time period 12:36pm to 1:06pm, February 7, 2009, 6.75 minutes:
> 60% opacity, time period 12:36pm to 1:06pm, February 7, 2009, 1.75 minutes;
> 20% opacity, time period 9:54 am to 10 54am, February 8, 2009, 5.5 minutes;
> 20% opacity, time period 3:03pm to 3:30pm, March 4, 2009, 6.45 minutes;
> 20% opacity, timer period 10:15am to 11:14am, March 5, 2009, 10.25 minutes;
> 20% opacity, time period 2:30 pm to 3:15pm, March 5, 2009, 9.75 minutes;
> 20% opacity, time period 10:04am to 11:04 am, March 6, 2009, 7.5 minutes;
> 20% opacity, time period 11:08am to 11:24am, March 6, 2009, 5.75 minutes
> 60% opacity, time period 11:08am to 11:24am, March 6, 2009, .25 minutes;
> 20% opacity, time period 12:09pm to 12:28 am, March 6, 2009, 5.5 minutes;
> 20% opacity, time period 11:15am to 11:45am, March 7, 2009, 30.5 minutes;
> 20% opacity, time period 4:00pm to 5:00pm, March 10, 2009, 5.25 minutes;
> 20% opacity, time period 3:32pm to 3:42pm, April 27, 2009, 3.5 minutes
> 20% opacity, time period 5:10pm to 6:10pm, April 28, 2009, 3.25minutes;
> 60% opacity, time period 5:10pm to 6:10pm, April 28, 2009, 3.75 minutes;

20% opacity, time period 6:19pm to 7:19pm, April 29, 2009, 16.0 minutes; and 20% opacity, time period 1:42pm to 2:22pm, May 1, 2009, 26.75 minutes;

38. Erie Coke violated and continues to violate 25 Pa. Code § 123.41, which establishes a visible emission opacity limit on the combustion stack of 20% for a period or periods aggregating more than three (3) minutes in any one (1) hour or a visible emission opacity limit on the combustion stack equal to or greater than 60% at any time.

39. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), for each violation referred to in the preceding paragraphs, Erie Coke is subject to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 15, 2004, and $37,500 per day for each violation occurring on or after January 12, 2009.

## SECOND CLAIM FOR RELIEF
### Pushing Emissions
### 25 Pa. Code 129.15(c)

40. Paragraphs 1 through 35 above are re-alleged as if fully set forth herein.

41. Between May 7, 2008 and May 13, 2009, EPA and/or PADEP conducted numerous inspections of the emission sources at the Facility. EPA and/or PADEP documented visible emission opacity in excess of 20% opacity from pushing operations on the following days:

May 8, 2008;
September 26, 2008;
September 30, 2008;
March 6, 2009;
March 8 2009;
March 10, 2009;
March 12, 2009;
May 7, 2009; and
May 13, 2009.

42. Each exceedence of the SIP limit on visible emission opacity limit for pushing operations is a violation of 25 Pa. Code 129.15(c).

43. Erie Coke violated and continues to violate 25 Pa. Code § 129.15(c), which establishes a visible emission opacity limit on pushing emissions of 20% for any period.

44. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), for each violation referred to in the preceding paragraph, Erie Coke is subject to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 15, 2004 and $37,500 per day for each violation occurring on or after January 12, 2009.

### THIRD CLAIM FOR RELIEF
### Improper Operation and Maintenance
### 25 Pa. Code § 127.25

45. Paragraphs 1 through 35 above are re-alleged as if fully set forth herein.

46. The Pennsylvania SIP, 25 Pa. Code § 127.25, provides that an operator shall not cause or permit the operation of a source in a manner "inconsistent with good operating practices."

47. Proper maintenance of coke ovens and associated equipment is essential to avoid excess emissions from equipment including: coke oven doors, jambs, buckstays, tie rods, flues, standpipes, and stacks. Equipment maintenance is also essential to prevent excess emissions from activities conducted for each oven in use on a daily basis such as charging, pushing, quenching and soaking.

48. Erie Coke has not maintained its coke ovens in a condition that would minimize emissions as required by the Pennsylvania SIP.

11

49. Many ovens at the Facility are in poor condition. These ovens likely generate more fugitive emissions because they do not work properly and should be repaired. Operating these ovens in this condition is not consistent with the requirement to employ good operating practices. Therefore, Erie Coke has operated and continues to operate in violation of 25 Pa. Code 127.25.

50. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), for each violation referred to in the preceding paragraphs, Erie Coke is subject to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 15, 2004 and $37,500 per day for each violation occurring on or after January 12, 2009.

### FOURTH CLAIM FOR RELIEF
### Emission Testing
### Title V Permit

51. The allegations of Paragraphs 1 through 35 are incorporated herein by reference.

52. On September 26, 2008 and September 30, 2008, the PADEP conducted an inspection of the Facility. PADEP documented that no annual stack test for NOx emissions from Boiler #1 had been conducted since December 1999 and that no annual stack test for NOx emissions from Boiler #2 had been conducted since October 2003.

53. Every day since December 1999 that the stack for Boiler #1 has not been tested for NOx emissions is a violation of Erie Coke's Title V Permit.

54. Every day since October 2003 that the stack for Boiler #2 has not been tested for NOx emissions is a violation of 25 Pa. Code §127.444.

55. Erie Coke violated and continues to violate 25 Pa. Code §127.444, which requires Erie Coke to comply with the annual emission testing requirement for NOx for each of the Boilers set forth in its Title V Permit.

56. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), for each violation referred to in the preceding paragraph, Erie Coke is subject to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 15, 2004 and $37,500 per day for each violation occurring on or after January 12, 2009.

### FIFTH CLAIM FOR RELIEF
### Other Title V Permit Violations

57. Paragraphs 1 through 56 above are re-alleged as if fully set forth herein.

58. Pursuant to the SIP, 25 Pa. Code § 127.444, it is illegal to operate a permitted source in violation of any condition of its Title V Permit requirements.

59. The Title V Permit for the Facility, No TV-25-00029, incorporates by reference Pennsylvania SIP requirements including 25 Pa. Code §§ 123.41, 127.25, and 129.15(c).

60. Each violation of 25 Pa. Code §§ 123.41, 127.25, and 129.15(c), is a violation of the Title V Permit enforceable pursuant to 25 Pa. Code § 127.444 and 42 U.S.C. § 7661a(a).

61. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), for each violation referred to in the preceding paragraphs, Erie Coke is subject to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 15, 2004, and $37,500 per day for each violation occurring on or after January 12, 2009.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America, and the Commonwealth of Pennsylvania respectfully request that this Court:

A.	Permanently enjoin Defendant from further violations of the CAA and applicable requirements established thereunder, including provisions of the Pennsylvania SIP described above;

B.	Require Defendant to obtain and comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with the CAA and applicable requirements established thereunder, including provisions of the Pennsylvania SIP described above;

C.	Assess civil penalties against Defendant for violations of applicable provisions of the CAA as well as their implementing regulations and permits issued thereunder of up to $32,500 per day of violation occurring on or after March 15, 2004 and $37,500 per day of violation occurring on or after January 12, 2009;

D.	Award Plaintiffs their costs and disbursements for this action; and

E.	Grant Plaintiffs such other relief as the Court may deem just and proper.

Respectfully submitted,

UNITED STATES DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES
DIVISION

JOHN C. CRUDEN
Acting Assistant Attorney General

Environment and Natural Resources Division
U.S. Department of Justice

*Elliot Rockler*
ELLIOT M. ROCKLER
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2653
elliot.rockler@usdoj.gov


MARY BETH BUCHANAN
United States Attorney
Western District of Pennsylvania


By: s/Paul E. Skirtich
PAUL E. SKIRTICH
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7418
PA ID No. 30440


OF COUNSEL:
DANIEL BOEHMCKE
Senior Assistant Regional Counsel
United States Environmental
 Protection Agency-Region 3
1650 Arch Street
Philadelphia, Pennsylvania 19103

15

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL PROTECTION

_____
Stephanie K. Gallogly, PA I.D. No. 70405
Douglas G. Moorhead, PA I.D. No. 74560
Assistant Counsel
Northwest Regional Counsel
230 Chestnut Street
Meadville, PA 16335-3418
Phone: 814-332-6070
Facsimile: 814-332-6996
E-mail: sgallogly@state.pa.us